Upper St. Clair Township Appeal.

Argued March 20, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*C. Francis Fisher*, with him *Brenlove and Fisher*, for appellant.

*Howard V. Heck*, with him *Neely & Will*, for appellee.

OPINION BY MR. JUSTICE O'BRIEN, September 25, 1962:

The Township of Upper St. Clair appeals from the order of the County Court of Allegheny County directing the township to issue a building permit to Nick Valicenti for the erection of a dwelling house on a lot owned by him within the township. Valicenti's application for a building permit was denied by the town-

ship's secretary-manager for the reason that it alleged-ly did "not conform to [the] Township Sub-division and Zoning Ordinance". This refusal was affirmed by the township board of adjustment and, on appeal by Valicenti, the court below reversed and ordered the permit to issue, thereby giving rise to the instant appeal by the Township.

Nick Valicenti is the owner of a lot having a frontage of 100.09 feet on Orr Road in the township. He acquired this property by deed from his father and mother in 1957. His parents in turn had acquired the property as part of a larger tract in 1956. The said larger tract was conveyed to the elder Valicenti by one Beinhauer who had taken title to it in 1943, prior to the enactment of the township's zoning ordinance. The land in question is in an area known as the Trotwood Acres North Plan, an unrecorded plan, and is comprised of parts of lots 25 and 26 in said plan.

The zoning ordinance of the township, Ordinance No. 1, provides in its pertinent parts as follows: "The First Area District (District A-1) shall comprise all property laid out in the following plans of lots in said Township:" (There follows a list of plans and a reference to the plan book where the same are recorded) "Trotwood Acres North Plan . . . .

"(1) In the First Area District (District A-1) the minimum area of lot required for each single family house thereon shall be the number of square feet, as designated on plans described in preceding paragraph (a) with the following exceptions, namely, any acreage within said plan, not laid out and recorded as a building lot at the time this act goes into effect and any lot in the present recorded plans with the frontage of three hundred (300) feet or more, shall comply with the requirements set forth herein under the second Area District (District A-2). (b) The Second Area District (District A-2) shall comprise the remaining

portions of the Township exclusive of that portion contained in the First Area District. (1) In those portions of the Second Area District laid out in plans of lots and recorded following the enactment of Ordinance No. 1 on April 21, 1947, and prior to the passage of this amendment, the minimum area of lot required for each single family dwelling house thereon shall be the number of square feet as designated on the recorded plan with the following exceptions, namely, any acreage within said plans not laid out and recorded as a building lot at the time this amendment goes into effect, and any lot in the present recorded plans with the frontage of three hundred (300) feet or more, shall comply with the requirements set forth herein for the areas in the Second Area District (District A-2) not laid out in plans of lots. (2) In those portions of the Second Area District (District A-2) not laid out in plans of lots and not recorded at the time of enactment of this amendment the minimum area of lot required for each single family dwelling erected thereon shall be as follows: (a) Where water furnished by a Public Agency or Public Utility is made available, the minimum area required shall be thirteen thousand (13,000) feet with a minimum lot frontage at the building line of ninety (90) feet."

The original lot No. 26 in the unrecorded plan had a frontage slightly in excess of 300 feet. The lot had, however, been divided and conveyances made and residences erected without reference to lot numbers, prior to the enactment of the zoning ordinance. The land conveyed to Beinhauer, and subsequently by him to the elder Valicenti, therefore did not exist as a laid out lot in the Trotwood Acres North Plan, at the time of the enactment of the zoning ordinance. Clearly then, this land must be considered as being governed by the A-2 restrictions and there can be no doubt that the lot owned by Nick Valicenti, approximately one half of

the Beinhauer tract, complies with those requirements.* There is no justification for the township's position that the land is in an A-1 district.

Nor is there justification for the township's position that the proposed building is in violation of its Ordinance Number 3, the subdivision ordinance. That ordinance, Section 1(f), defines subdivision as the "division of a single lot, tract or parcel of land into three or more lots, tracts or parcels of land . . . ." As was previously pointed out, the Beinhauer tract existed as an entity prior to the enactment of the zoning ordinance, and it also existed as an entity prior to the enactment of the subdivision ordinance. There has been no attempt to divide this tract into three or more parcels, the Adamson and Nick Valicenti parcels being the only ones sought to be created out of the original whole, and the subdivision ordinance is inapplicable.

Since the court below heard additional evidence when the case was before it, our function on appeal is to determine whether the court, rather than the board of adjustment, abused its discretion or committed an error of law in reaching its conclusion. *Cresko Zoning Case,* 400 Pa. 467, 162 A. 2d 219 (1960); *Richman v. Zoning Board of Adjustment,* 391 Pa. 254, 137 A. 2d 280 (1958). Far from finding an abuse of discretion or error of law, our review causes us to agree with the conclusion of the court below that "The considerations supposedly barring the grant of the permit are manifestly groundless; no rule of law nor provision in the township codes, nor language in the zoning ordinance remotely sustains the refusal".

Order affirmed.

---

* After the elder Valicentis acquired their tract from Beinhauer, they conveyed approximately one half of it to one Adamson, who applied for and was issued a building permit and built a home. The other half of the property is the land upon which Nick Valicenti seeks to build.